UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LADONNA REED-MORTON**,<br><br>　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>**MARCIA FUDGE**,<br>*Secretary, U.S. Department of Housing<br>And Urban Development*,<br><br><br>　　　　　　　Defendant. | Case No. 1:22-cv-01079 (TNM) |

## **MEMORANDUM AND ORDER**

LaDonna Reed-Morton, proceeding *pro se*, sues her employer, the Department of Housing and Urban Development, for retaliation and creation of a hostile work environment. Reed-Morton previously raised a number of allegedly retaliatory acts before an Equal Employment Opportunity Commission administrative judge. She now seeks de novo review of 35 of these acts here, and she argues that together they constitute a hostile work environment.

　The Department moves to dismiss 33 of the acts and the hostile work environment claim. It argues that Reed-Morton fails to state a claim for each as a discrete act of retaliation, and that they do not create a hostile work environment in the aggregate. In the alternative, the Department moves for summary judgment and offers evidence in support. The Court grants the Department's motion to dismiss 28 of the allegedly retaliatory acts and its motion for summary

1

judgment as to five of the acts.[1]  The Court also grants the Department's motion to dismiss Reed-Morton's hostile work environment claim.

### I.

Reed-Morton is an African-American woman who works at the Department.  *See* Compl. ¶ 1.  She first filed an Equal Employment Opportunity (EEO) complaint against her supervisor in 2015 for sexual harassment.  *See id.* ¶ 2.  Reed-Morton then filed a second EEO complaint against different supervisors in 2017 for harassment and retaliation based on her prior EEO activity.  *See id.* ¶ 9.

After she filed the 2017 EEO complaint, Reed-Morton alleges that her supervisors "subjected [her] to tangible employment actions" including "negative performance ratings, reprimand and other disciplinary actions, and disparate treatment as to assignments, duties, training, and access to information."  *Id.* ¶ 18.  Reed-Morton alleges they did so because she filed an EEO complaint.  *See id.* ¶¶ 17–19.  She also claims that her supervisors issued her a written counseling letter and a letter of reprimand.  *See id.* ¶ 17.  And she argues that the Department gave her notice of a proposed 14-day suspension without pay, and then suspended her for five days without pay.  *See id.*  More, she alleges that the Department "failed to take any corrective action" against her supervisors, creating a hostile work environment "in retaliation for [her] prior protected EEO activity."  *Id.* ¶ 20.  Finally, Reed-Morton notes that her supervisors notified her that they were removing her, *see id.* ¶ 17, and then did so, *see id.* ¶ 24.

Several months after the Department removed her, Reed-Morton prevailed on her 2015 EEO complaint that her supervisor had sexually harassed her.  *Id.* ¶ 25.  Soon after, an arbitrator

---

[1] The Department concedes that Reed-Morton has adequately pled two allegedly retaliatory actions: her five-day suspension, *see* Compl. ¶ 27, No. 31, and her Fiscal Year 2016 final rating, *see id.* No. 4.  *See* Def.'s Mot. at 2 n.2.  So these claims will proceed to summary judgment.

found that the Department had wrongfully terminated Reed-Morton in 2018. *Id.* ¶ 24 n.7. The arbitrator ordered the Department to reinstate Reed-Morton with backpay and restore her benefits. *See id.*; *see also Reed-Morton v. Carson*, No. 21-cv-0001, ECF No. 11-1 (D.D.C. Nov. 17, 2021) (declaration from Department official explaining the arbitrator's decision). Then, an EEOC administrative judge found that Reed-Morton had proven by a preponderance of the evidence that eight of the 46 acts she raised in her 2017 EEO complaint were retaliatory and created a retaliatory hostile work environment. *See* ECF 1-1 at 61–62 (EEOC decision on 2017 complaint).

Now, Reed-Morton seeks de novo review of 35 acts that the administrative judge found were not retaliatory. *See* Compl. ¶ 27 (listing acts). Reed-Morton also argues that these 35 actions combined created a retaliatory hostile work environment. *See id.* ¶ 20. The Department moves to dismiss in part, or for summary judgment in part. *See* Def.'s Mot. to Dismiss in Part or for Summ. J. in Part (Def.'s Mot.), ECF No. 7. This motion is ripe for decision. This Court has jurisdiction under 42 U.S.C. § 2000e–5(f)(3).

## II.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere "labels and conclusions," "formulaic recitation of the elements of a cause of action," and "naked assertion[s] devoid of further factual enhancement" do not suffice. *Id.*

At the motion to dismiss stage, the Court treats the Complaint's factual allegations as true and grants the Plaintiff the benefit of inferences drawn from the facts alleged. *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). But the Court need not accept inferences unsupported by facts alleged in the Complaint. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling on a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint [and] documents attached as exhibits or incorporated by reference in the complaint[.]" *Gustave-Schmidt v. Chao*, 226 F. Supp. 3d 191, 196 (D.D.C. 2002).

Under Rule 56(a), summary judgment is proper if "there is no genuine dispute of any material fact" so that the "movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The Court credits the nonmoving party's factual allegations and draws all justifiable inferences in her favor when ruling on a summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). And a Court may convert a motion to dismiss into a motion for summary judgment before discovery if "both sides had a reasonable opportunity to present evidence." *Wiley v. Glassman*, 511 F.3d 151, 160–61 (D.C. Cir. 2007).

Other local requirements also apply. In this district, a party opposing a motion for summary judgment must also comply with Local Rule 7.1(h), which requires her to file "a separate concise statement of genuine issues setting forth all material facts" that she disputes. LCvR 7.1(h); *see also SEC v. Banner Fund Int'l*, 211 F.3d 602, 616 (D.C. Cir. 2000). If the party opposing the summary judgment motion fails to file such a document, the Court considers the moving party's statement of undisputed facts admitted. *See Jackson v. Finnegan,*

*Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996) (explaining that "strict compliance" with this rule is justified).

Because Reed-Morton is *pro se*, the Court "liberally construe[s]" her Complaint and holds it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But these relaxed standards do not relieve Reed-Morton of her obligation to comply with the Federal Rules of Civil Procedure or the Local Rules. *See Hedrick v. FBI*, 216 F. Supp. 3d 84, 93 (D.D.C. 2016).

### III.

Title VII prohibits employers from retaliating against employees who oppose or formally complain about unlawful workplace practices. *See* 42 U.S.C. § 2000e–3(a). "The antiretaliation provision seeks to prevent harm to individuals based on what they do, *i.e.*, their [protected] conduct" while other provisions of Title VII protect individuals "based on who they are, *i.e.*, their status." *Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53, 63 (2006). To bring an unlawful retaliation claim, Reed-Morton must allege (1) that she opposed a practice made unlawful by Title VII, (2) that her employer took a materially adverse action against her, *see McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012), and (3) that her protected activity "was a but-for cause of the alleged adverse action by the employer," *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

The Department addresses only the second prong of the test. It argues that 33 of Reed-Morton's allegedly retaliatory actions should be dismissed because they do not plausibly describe materially adverse actions. *See* Def.'s Mot. at 5–14. An action is materially adverse if it "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington Northern*, 548 U.S. at 63 (quoting *Rochon v. Gonzales*, 438 F.3d

1211, 1219 (D.C. Cir. 2006)). The material adversity requirement exists to "separate significant from trivial harms." *Id.* It does not encompass "petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at 68. Typically, a materially adverse action involves "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013).

The Department argues that Reed-Morton's alleged retaliatory acts fall into several categories—none of which rise to the level of materially adverse actions. *See* Def.'s Mot. at 7–14. The Court analyzes each in turn.

### A.

First up are Reed-Morton's arguments that various actions and statements by her supervisor were retaliatory. *See* Compl. ¶ 27, Nos. 8, 11, 13, 16, 17, 22, 26, 27, 29, 32. The Department argues that these alleged acts are mere workplace annoyances, petty slights, and bullying that are not materially adverse. *See* Def.'s Mot. at 7–8. The Court agrees.

Reed-Morton says that her supervisor emailed her that she would be conducting her mid-year and final review even though she had only supervised Reed-Morton for a short time. *See* Compl. ¶ 27, No. 8. Reed-Morton also claims that her supervisor told her that their co-worker met with others and received negative feedback about Reed-Morton's performance from clients. *See id.* No. 11. More, Reed-Morton argues that her supervisor falsely accused her of leaving work early, *see id.* No. 13, and did not allow her to move scheduled training to a different time even though other co-workers could, *see id.* No. 17. Reed-Morton also alleges that her supervisor instructed her to copy her on every email, *see id.* No. 26, and told her to perform work on short notice, *see id.* No. 27.

These allegedly retaliatory acts at most reflect common workplace frustrations and disagreements between Reed-Morton and her supervisor. They involve "petty slights or minor annoyances that often take place at work," which the Supreme Court has held are not materially adverse actions. *Burlington Northern*, 548 U.S. at 68. The actions Reed-Morton alleges would not plausibly "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Id.*; *see also Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009) ("[M]inor inconveniences and alteration of job responsibilities do not rise to the level of adverse action necessary to support a claim." (cleaned up)).

Along the same lines, Reed-Morton also claims that her supervisor threatened to mark her AWOL for using sick leave, *see* Compl. ¶ 27, No. 16, and failed to act on her timecard, *see id.* Nos. 22, 32. But Reed-Morton does not allege that her supervisor actually marked her AWOL, or that the threat affected her pay. These differences matter. *Cf. Douglas-Slade v. LaHood*, 793 F. Supp. 2d 82, 99 (D.D.C. 2011) (plaintiff marked AWOL for one day failed to state a retaliation claim because she did not show materially adverse effects on the conditions of her employment or discouragement from bringing an EEO complaint); *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008) (Kavanaugh, J.) (holding that proposed suspensions are typically not materially adverse actions).

Reed-Morton also alleges that her supervisor "made a physically threatening posture and demeanor" towards her after they had a meeting. Compl. ¶ 27, No. 29. But without more, this allegation is at most a "petty slight[]" and "simple lack of good manners" that is not actionable as retaliation. *Burlington Northern*, 548 U.S. at 68. Other judges in this district have held that allegations of feeling "intimidated" or "bullied" in a meeting, without more, are not materially adverse actions. *See, e.g.*, *Paschal v. District of Columbia*, 65 F. Supp. 3d 172, 180 (D.D.C.

7

2014). Reed-Morton's claims similarly fail to rise to the level of materially adverse actions and must be dismissed.

**B.**

Reed-Morton also argues that the Department retaliated against her by giving her assignments outside her position description. *See* Compl. ¶ 27, Nos. 3, 14, 15, 24. The Department claims these actions are not truly adverse. *See* Def.'s Mot. at 9. The Court agrees.

Reed-Morton claims that the Department told her to perform duties beyond the scope of her job, *see* Compl. ¶ 27, Nos. 3, 14, and then "berated her via email . . . for being delinquent," *id.* No. 14. She also contends that the Department treated her unfairly by asking her to perform new major duties for various budget accounts. *See id.* No. 15. Finally, Reed-Morton argues that a supervisor failed to give her sufficient time to learn a new business area after assigning it to her as a new duty outside her job description. *See id.* No. 24.

"Ordinarily, changes in an employee's assignments or work-related duties, without more, do not constitute materially adverse action, and an employee's dissatisfaction with her supervisor is likewise insufficient to state a claim for retaliation." *Payne v. Salazar*, 899 F. Supp. 2d 42, 56 (D.D.C. 2012). Reed-Morton alleges nothing "more" here, and her claims are like others that courts have found were not materially adverse. *See, e.g.*, *Allen v. Napolitano*, 774 F. Supp. 2d 186, 203 (D.D.C. 2011) (finding that unreasonable deadlines and lack of support are not materially adverse actions); *Brodetski v. Duffey*, 141 F. Supp. 2d 35, 45 (D.D.C. 2001) (reasoning that the imposition of a heavier workload is not a materially adverse action).

True, courts have found that some changes in employment duties rise to the level of materially adverse actions. But such changes typically involve employers requiring additional arduous physical labor, *see Burlington Northern*, 548 U.S. at 69; *Payne*, 899 F. Supp. 2d at 56–

57, severely increasing an employee's workload to five or six times that of other employees to keep her "too busy to file complaints," *Mogenhan v. Napolitano*, 613 F.3d 1162, 1166 (D.C. Cir. 2010), or rescinding supervisory duties, *Geleta v. Gray*, 645 F.3d 408, 411 (D.C. Cir. 2011). In contrast, Reed-Morton only alleges that she was assigned more work outside her position description to complete on a tighter timeline. She has not alleged facts sufficient for the Court to conclude that the Department's actions would dissuade a reasonable worker from complaining about discrimination. *See Burlington Northern*, 548 U.S. at 63. Thus, these claims must be dismissed.

### C.

Next up are Reed-Morton's arguments that the Department retaliated against her by giving her similarly situated colleagues more and better training. *See* Compl. ¶ 27, Nos. 21, 25, 30. The Department argues that such actions are not materially adverse. *See* Def.'s Mot. at 9, 14. The Court agrees.

Reed-Morton argues that her supervisor refused to provide her with the same level of training as her co-workers, *see* Compl. ¶ 27, No. 25, denied her a free Excel training, *see id.* No. 30, and told her to complete assignments without adequate training, *see id.* No. 21. Courts in this district have found that the denial of training is not a materially adverse action. *See, e.g.*, *Allen*, 774 F. Supp. 2d at 204; *Dorns v. Geithner*, 692 F. Supp. 2d 119, 133 (D.D.C. 2010). Reed-Morton does not allege that she lacked the skills or knowledge to complete her work because she was denied training, or that the lack of training "produced any adverse consequences in her employment status, conditions, or benefits." *Dorns*, 692 F. Supp. 2d at 133; *accord Doe v. Gates*, 828 F. Supp. 2d 266, 270 (D.D.C. 2011). Thus, Reed-Morton has not alleged enough to show that the Department's denial of training would dissuade a reasonable worker from filing

complaints of discrimination. *See Burlington Northern*, 548 U.S. at 63. These claims must therefore be dismissed.

### D.

Reed-Morton also claims that the Department retaliated against her by promoting others above her. *See* Compl. ¶ 27, Nos. 5, 20. The Department argues that these actions are not materially adverse. *See* Def.'s Mot. at 10. The Department is correct.

Reed-Morton argues that the Department gave another employee the Team Lead position instead of her even though that employee had the same pay grade and less experience. *See* Compl. ¶ 27, No. 5. She also claims that the Department "superimposed a coworker on her after repeated reports of concerns about working/interacting with the individual." *Id.* No. 20. But Reed-Morton does not allege that she applied for the Team Lead, that receiving the position would tangibly change her benefits, or that she was even qualified for the position. *Cf. Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 123 (D.D.C. 2009) ("Because [plaintiff] fails to show that he was qualified for a grade increase, he fails to present a prima facie case for retaliation."); *see also Hinds v. Mulvaney*, 296 F. Supp. 3d 220, 240 (D.D.C. 2018) (denying retaliation claim for failure to promote in part due to plaintiff's failure to complete promotion application), *aff'd,* 2019 WL 5432064 (D.C. Cir. March 28, 2019). And Reed-Morton does not describe how the Department "superimposing" someone on her changed her benefits or job status in a tangible way.

As the Circuit has explained, "[a]n adverse employment action does not occur merely because an employer adds more people to the team[.]" *Baloch*, 550 F.3d at 1197. Without allegations that Reed-Morton suffered loss of salary, grade level, benefits, or significant responsibility, this Court is "hesitan[t] to engage in judicial micromanagement of business

practices by second-guessing employers' decisions[.]" *Id.* at 1196–97. The Department's commonplace decision to promote some people above others would not deter a reasonable worker from complaining about discrimination. *See Burlington Northern*, 548 U.S. at 63. Reed-Morton therefore fails to state a claim for retaliation.

### E.

Reed-Morton also argues that the Department retaliated against her by proposing to remove her from federal service. *See* Compl. ¶ 27, No. 35. The Department argues that Reed-Morton already received relief for this action through arbitration, so the proposal to remove her is not separately actionable. *See* Def.'s Mot. at 14–15. The Court agrees.

As Reed-Morton notes, she filed a separate lawsuit in this district seeking to enforce an arbitration order in her favor. *See* Compl. ¶ 24 n.7. But the Department provided her with the relief that the arbitrator ordered, mooting the case. *See Reed-Morton v. Carson*, No. 21-cv-0001, at ECF Nos. 11 and 13. Even so, Reed-Morton now pleads the proposed removal from federal service as an independent retaliatory action. Courts in this district have held that a *proposed* employment decision is not actionable if it has no independent effects from the *final* decision. *See, e.g.*, *Hornsby v. Watt*, 217 F. Supp. 3d 58, 68–69 (D.D.C. 2015); *Roman v. Castro*, 149 F. Supp. 3d 157, 172 (D.D.C. 2016) (reasoning that plaintiff "has not shown that the Proposal to Suspend had effects independent of the suspension itself"). Because Reed-Morton does not allege that the Department's proposed removal had any effect beyond the removal itself, this claim is not a materially adverse action and must be dismissed.

**F.**

Lastly, Reed-Morton raises certain claims that the Department argues are purely conclusory or fail to allege harm. *See* Def.'s Mot. at 8, 13. Again, the Court agrees.

Reed-Morton lists as alleged retaliatory acts several conclusory statements. She claims that she was "treated less favorably . . . in the completion of work assignments," *see* Compl. ¶ 27, No. 19, that her co-worker misled Reed-Morton's clients, *see id.* No. 23, and that her supervisor harassed her for taking religious compensation time and in the completion of her new duties, *see id.* Nos. 28, 33. But she includes no facts to support these claims. Reed-Morton therefore levies only "the-defendant-unlawfully-harmed-me accusations," which even at the motion to dismiss stage are not enough. *Iqbal*, 556 U.S. at 678. Reed-Morton must provide more than "naked assertion[s] devoid of further factual enhancement." *Id.* (cleaned up). She has not done so here and therefore these allegedly retaliatory acts will be dismissed.

Finally, Reed-Morton at times argues that the Department acted in a retaliatory way but fails to allege how its actions harmed her. Without allegations of harm, these acts cannot be materially adverse. For example, she argues that her evaluation did not comply with the "SMART" method, *see* Compl. ¶ 27, No. 1, and that she received a negative performance rating in 2017, *see id.* No. 10. She similarly contends that her supervisor granted other employees access to critical information. *See id.* Nos. 2, 18. But Reed-Morton does not allege that failure to use the SMART method harmed her financially or otherwise impeded the performance of her duties. *See, e.g.*, *Howard v. Kerry*, 85 F. Supp. 3d 428, 434–35 (D.D.C. 2015) (collecting cases requiring allegations of harm). And she does not argue that the negative performance rating impacted her pay or that the withheld information was necessary to do her job. *Cf. Baloch*, 550 F.3d at 1199 (explaining that "performance reviews typically constitute adverse actions only

when attached to financial harms"); *accord Taylor*, 571 F.3d at 1321. Such actions, with no allegation that they harmed Reed-Morton, cannot rise to the level of materially adverse actions because harmless acts would not deter a reasonable employee from complaining about workplace discrimination. *See, e.g.*, *Baloch*, 550 F.3d at 1199.

### IV.

The Department moves in the alternative for summary judgment that the retaliatory acts Reed-Morton lists do not rise to the level of materially adverse actions. *See* Def.'s Mot. at 4. In support, the Department offers the emails between Reed-Morton and her supervisors that she describes in her Complaint as threatening, and the counseling notice and reprimand she argues is humiliating and demeaning. *See* Def.'s Mot., Exs. 1–6, ECF 7-3. Because the Court consults this evidence for five acts, the Court agrees that the summary judgment standard applies. *See* Fed. R. Civ. P. 12(d) (explaining that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment").

In exercising discretion to convert a motion to dismiss into a motion for summary judgment, this Court "must assure itself that summary judgment treatment would be fair to both parties." *Ryan-White v. Blank*, 922 F. Supp. 2d 19, 22 (D.D.C. 2013). It is fair to convert some of the Department's claims because Reed-Morton had access to the evidence it offers; indeed, she was a party to the emails and personally received the counseling notice and reprimand. *See* Exs. 1–6, ECF 7-3. As a result, she "has not been unfairly disadvantaged by being unable to access the sources of proof necessary to create a genuine issue of material fact." *Ryan-White*, 922 F. Supp. 2d at 24. Nor has she suggested she is missing discovery that would aid her.

**A.**

The first group of allegedly retaliatory acts all involve emails Reed-Morton sent or received. The Department submits the relevant emails and contends that their contents refute Reed-Morton's claims that they are threatening or materially adverse actions. *See* Def.'s Mot. at 10–12. The Court agrees and will grant the Department summary judgment as to these acts.

Reed-Morton alleges that her supervisor sent her a threatening email in November 2017. *See* Compl. ¶ 27, No. 6. But the email merely states, "LaDonna, Do not cc Shy on responses that are due to me. I need to consolidate all BPRD responses and send Shy one consolidated submission. Thanks, Kimberly." *See* Def.'s Stmt. of Undisputed Material Facts (SUMF) ¶ 1; *see also* Ex. 1, ECF 7-3.[2] Similarly, Reed-Morton alleges that her supervisor instructed her to stop emailing the General Deputy Assistant Secretary about harassment or reprisal. *See* Compl. ¶ 27, No. 34. But the first email is not threatening, and the second mentions nothing about harassment or reprisal. *See* Ex. 3, ECF 7-3. Neither email would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 63. So Reed-Morton fails to state a claim of retaliation as to these acts.

Reed-Morton also alleges that she emailed a top Department official "to make her aware of the hostile work environment, but did not receive a response." *See* Compl. ¶ 27, No. 9. But the Department submits email responses in which they confirmed that they had investigated Reed-Morton's complaints and offered her an interview. *See* Exs. 6, 7, ECF 7-3. That Reed-

---

[2] The Department states in its SUMF that the emails it attaches to its Motion to Dismiss and for Summary Judgment are the ones corresponding to Reed-Morton's allegations in paragraph 27 of her Complaint. Because Reed Morton ignored Local Rule 7.1(h) by neglecting to file "a separate concise statement of genuine issues setting forth all material facts" that she disputes, LCvR 7.1(h), the Court may find the facts in the Department's SUMF admitted, *see, e.g.*, *Banner Fund Int'l*, 211 F.3d at 616.

Morton did not receive a response from the specific official she had emailed is not retaliatory action because it would not deter a reasonable worker from levying a charge of discrimination. *See Burlington Northern*, 548 U.S. at 63.  Indeed, it is absurd to suggest that high-level civil servants must respond to every email from line employees or else incur liability for their agency.

**B.**

The second group of allegedly retaliatory actions involve correspondence from the Department to Reed-Morton.  The Department submits these documents and contends that none rise to the level of materially adverse actions.  *See* Def.'s Mot. at 11–12.  The Court agrees.

Reed-Morton alleges that the written counseling notice and letter of reprimand that her supervisor sent her were retaliatory.  *See* Compl. ¶ 27, Nos. 7, 12.  Courts have explained that such communications do not constitute materially adverse actions if they contain "job-related constructive criticism" rather than "abusive language," *Baloch*, 550 F.3d at 1999, and there is no evidence that the communications caused material harm to the employee, *see Wade v. District of Columbia*, 780 F. Supp. 2d 1, 17 (D.D.C. 2011).

Though Reed-Morton claims the counseling notice was "designed to demean, humiliate, intimidate[,] and silence her from raising issues to Agency officials concerning discriminatory treatment," the notice's language is objective.  *See* Ex. 4, ECF No. 7-3.  It merely informs Reed-Morton that her behavior was "unacceptable" and that she must "maintain a professional decorum and refrain from loud outbursts and disrespectful comments to the staff."  *Id.*  So too the letter of reprimand.  *See* Ex. 5, ECF No. 7-3.  More, each document reveals that it is not itself a disciplinary action, but that similar conduct in the future could lead to disciplinary action.  *See* Exs. 4 & 5, ECF No. 7-3.  And "mere speculation that a letter of reprimand *may* lead to future punishment is insufficient to establish an adverse employment action."  *Wade*, 780 F. Supp. 2d at

17. Because Reed-Morton does not allege that either the notice or the letter caused her material harm, and because these actions would not deter a reasonable employee from raising grievances, she has failed to state a claim for retaliation. *See Burlington Northern*, 548 U.S. at 63.

## V.

Reed-Morton also alleges that the Department, through the 35 allegedly retaliatory acts, created a retaliatory hostile work environment. *See* Compl. ¶¶ 20, 27. The Department counters that Reed-Morton fails to state a claim because she has not pled the requisite severe or pervasive conduct. *See* Def.'s Mot. at 15–18. The Department is correct.

Alongside Title VII's generic bar on retaliation for protected conduct, courts have "recognized a special type of retaliation claim based on a 'hostile work environment.'" *Baird v. Gotbaum*, 792 F.3d 166, 172 (D.C. Cir. 2015). To state a claim that the Department's actions created a hostile work environment, Reed-Morton must allege that she faced "discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013).

In evaluating a hostile work environment claim, the Court "looks to the totality of the circumstances, including the frequency of the [retaliatory] conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch*, 550 F.3d at 1201. And "[t]he standard is an objective one." *Baird*, 792 F.3d at 169. It is also a high one—Title VII is not meant to be a general civility code. *Arnoldi v. Bd. of Trustees, Nat'l Gallery of Art*, 557 F. Supp. 3d 105, 120 (D.D.C. 2021), *aff'd,* 2022 WL 625721 (D.C. Cir. Mar. 1, 2022).

In *George v. Leavitt*, for example, the D.C. Circuit held that statements by three employees over a six-month period telling a plaintiff to "go back where she came from," separate

16

acts of yelling and hostility, and allegations that a plaintiff did not receive the work assignments she deserved were insufficiently severe to create a hostile work environment. 407 F.3d 405, 416–17 (D.C. Cir. 2005). And "work-related actions by supervisors" generally cannot sustain hostile work environment claims because they cannot "be characterized as sufficiently intimidating or offensive in an ordinary workplace context." *Wade*, 780 F. Supp. 2d at 19.

Courts in this district have overwhelmingly held that petty work-related actions—including negative evaluations, less favorable treatment in the workplace, hurtful comments, denial of training opportunities, close monitoring by supervisors, and reprimands—seldom create a hostile work environment, even when combined. In *Nurriddin v. Bolden*, for example, the court held that a man failed to state a hostile work environment claim where his employer denied him a promotion, negatively evaluated him, reprimanded him, scrutinized his work closely, and did not provide him with staffing support. 674 F. Supp. 2d at 93–94. The court explained that "not just any offensive or discriminatory conduct rises to an actionable hostile work environment"; the key indicia are "severe," "pervasive," and "abusive" behavior. *Id.* at 93. The court reasoned that the plaintiff fell "far short" of alleging a hostile work environment because none of his allegations rose to the level of severe, pervasive, or abusive behavior. *Id.* at 95; *see also, e.g.*, *Uzoukwu v. Metro. Wash. COG*, 130 F. Supp. 3d 403, 414–16 (D.D.C. 2015) (holding that a plaintiff failed to state a hostile work environment claim where she allegedly received a negative performance evaluation, counseling referral, and verbal abuse); *Tyes-Williams v. Whitaker*, 361 F. Supp. 3d 1, 7–8 (D.D.C. 2019) (holding that a plaintiff failed to state a hostile work environment claim where he alleged denial of training, use of vague performance evaluations, and workplace slights). So too here.

Reed-Morton alleges that she received negative performance ratings, lesser training, and work assignments outside her position description. *See* Compl. ¶ 27. Reed-Morton also claims that her supervisor falsely accused her of leaving work early, threatened to mark her AWOL, micromanaged her workplace communications, proposed to remove her from federal service, told her to do work on short notice, and did not promote her. *See id.* But she does not allege that she faced "intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to alter the conditions of [her] employment." *Ayissi-Etoh*, 712 F.3d at 577. Her allegations are more like the work-related actions of supervisors that other courts in this district have found failed to create a hostile environment. *Cf. Nurriddin*, 674 F. Supp. 2d at 94; *Tyes-Williams*, 361 F. Supp. 3d at 7–8; *Uzoukwu*, 130 F. Supp. 3d at 414–16.

More, Reed-Morton does not claim that the allegedly retaliatory actions interfered with her work performance. *See Baloch*, 550 F.3d at 1201. Though she claims the Department denied her request for training, *see* Compl. ¶ 27, Nos. 25, 30, she does not allege that her performance suffered as a result. And the Court does not think that the actions Reed-Morton alleges are pervasive or abusive enough to state a claim, either. As explained in Part III, many of the allegedly retaliatory actions "describe the ordinary tribulations of the workplace that courts have refused to find actionable." *Menoken v. Dhillon*, 975 F.3d 1, 7 (D.C. Cir. 2020). Thus, considering the totality of the circumstances and Reed-Morton's allegations, the Court finds that she has failed to state a claim that the Department created a hostile work environment.

To be sure, Reed-Morton raises many discrete acts. But the Circuit has been careful to explain that the "sheer volume of [a plaintiff's] allegations does not change our conclusion: a long list of trivial incidents is no more a hostile work environment than a pile of feathers is a crushing weight." *Baird*, 792 F.3d at 172. And courts in this district have explained that "[u]se

of the same discrete acts, upon which the plaintiff bases [her] . . . retaliation claims, to support a hostile work environment claim is disfavored." *Townsend v. United States*, 236 F. Supp. 3d 280, 312 (D.D.C. 2017) (collecting cases). Petty workplace slights which are not independently actionable rarely become actionable by being added to other independently harmless slights. For all these reasons, the Court finds Reed-Morton did not adequately plead that the Department created a hostile work environment.

\* \* \*

The Department also contends that Reed-Morton concedes all arguments because she fails to "meaningfully respond to the arguments for dismissal." *See* Def.'s Reply at 1, ECF No. 11. The Court agrees. This is an independent and adequate basis for dismissing Reed-Morton's 33 allegedly retaliatory acts and her hostile work environment claim.

Reed-Morton's opposition merely relists the allegedly retaliatory actions and cites her Complaint, claiming that she already stated sufficient facts to prove retaliation. *See generally* Opp'n, ECF No. 10. She does not engage with the Department's legal arguments for each of her actions. And in support of her hostile work environment claim, she only cites an exhibit to her Complaint which contains the conclusory allegation that she was subject to severe and pervasive conduct. *See id.* at 7. She ignores the Department's legal arguments to dismiss this claim, too.

Local Rule 7(b) allows this Court to treat a motion as conceded "if a party files an opposition to a motion and therein addresses only some of the movant's arguments." *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014). Reed-Morton does not address any of the Department's arguments other than to state in conclusory fashion that her complaint and exhibits were sufficient. *See generally* Opp'n. So the Court deems the Department's motion to dismiss conceded. *Accord Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15,

25 (D.D.C. 2003) (finding that a plaintiff conceded arguments about disparate treatment in an abusive work environment when she failed to address them in her opposition), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004).

Though Reed-Morton suggests in her opposition that she should be granted leave to amend her Complaint if it fails to state a claim, *see* Opp'n at 8, ECF No. 10, she has not followed the proper procedure to seek amendment under Rule 15. *See Schmidt v. United States*, 749 F.3d 1064, 1069 (D.C. Cir. 2014) (explaining that Rule 15(a), even as liberally construed, applies only when the plaintiff has moved for leave to amend). The Court therefore agrees with the Department that Reed-Morton should not be granted leave to amend her Complaint merely by requesting it in her opposition.

## VI.

For these reasons, the Court GRANTS the Department's motion to dismiss 28 of Reed-Morton's allegedly retaliatory acts and its motion for summary judgment as to five of the acts. The Court GRANTS the Department's motion to dismiss Reed-Morton's retaliatory hostile work environment claim. Reed-Morton's claims that the Department retaliated against her when it suspended her for five days and gave her a lower final rating in 2016, *see* Compl. ¶ 27, Nos. 4, 31, will proceed to discovery.

**SO ORDERED.**

Dated: November 1, 2022                       _____
                                              TREVOR N. McFADDEN, U.S.D.J.